**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

VICTORIA L. BEYER, TERESA M.
BISHOP, MAGGIE J. BOHN, TOM E.
BREMER, MICHELLE BREMER, SCOTT
M. BROEKMAN, JASON J. COGGON,
COLLEEN HIETPAS, TIMOTHY J.
MOSSBERGER, EMILY J. SWITZ, PAULA
VERRETT, individually and on behalf of all
others similarly situated,

Plaintiffs,

*vs.*                                                     Case No. 1:18-cv-001271

AMERICOLLECT, INC., a Wisconsin
Corporation; and, JOHN DOES,

Defendants.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
FAIR DEBT COLLECTION PRACTICES ACT AND DEMAND FOR JURY TRIAL**

This action is brought by Plaintiffs, VICTORIA L. BEYER, TERESA M. BISHOP,

MAGGIE J. BOHN, TOM E. BREMER, MICHELLE BREMER, SCOTT M. BROEKMAN,

JASON J. COGGON, COLLEEN HIETPAS, TIMOTHY J. MOSSBERGER, EMILY J.

SWITZ, PAULA VERRETT, individually and on behalf of all others similarly situated, against

Defendants, AMERICOLLECT, INC. ("AMERICOLLECT") and JOHN DOES, based on the

following:

## I.        PRELIMINARY STATEMENT

1.        Plaintiffs bring this action individually and on behalf of all others similarly

situated for the illegal practices of Defendant when attempting to collect an alleged debt from

them in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

Case 1:18-cv-01271-WCG        Filed 08/16/18        Page 1 of 23        Document 1

2.      Such practices include attempting to collect consumer debts by engaging in conduct prohibited by, or failing to engage in conduct required by, the FDCPA.

3.      The FDCPA regulates the behavior of "debt collectors" (including collection agencies, collection attorneys, debt buyers) when attempting to collect a consumer debt. Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA was expressly adopted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

4.      The FDCPA, at 15 U.S.C. § 1692c, prohibits when and with whom a debt collector may communicate when attempting to collect a debt and, at 15 U.S.C. § 1692b, limits communications with third parties to the collection of "location information."

5.      When collecting or attempting to collect a debt, the FDCPA bars a debt collector's use of: (a) harassing, oppresive, and abusive conduct; (b) false, deceptive, or misleading means or representations; and (c) unfair or unconscionable means. 15 U.S.C. §§ 1692d, 1692e, and 1692f. Each of those Sections contain a list of specific *per se* violations but they are nonexclusive and do not limit the general application of each Section's broad prohibitions.

6.      When the collection process starts, the FDCPA requires a debt collector to provide a consumer with basic debt information and the consumer's right to debt-verification. 15 U.S.C. § 1692g.

7.     When the collection process escalates to litigation, the FDCPA prohibits lawsuit from being commenced in a distant venue. 15 U.S.C. § 1692i.

8.     Although the FDCPA is not a strict-liability statute, "most infractions result in liability" without proof of *scienter* unless the specific infractions includes an element of intent or purpose, or the debt collector can affirmatively prove a *bona fide* error under 15 U.S.C. § 1692k(c). *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 502 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1283 (2018).

9.     A debt collector's conduct violates the FDCPA when viewed from the perspective of an "unsophisticated debtor." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). "The unsophisticated consumer is uninformed, naive, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 678 (7th Cir. 2007) (internal editing notations and quotation marks omitted).

10.     A single violation is sufficient to establish liability. *Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002).

11.     When a debt collector fails to comply with the FDCPA "with respect to any person," it "is liable to such person in an amount equal to the sum of" "any actual damage sustained," "additional" or statutory damages, costs, and reasonable attorneys' fees. Statutory damages are limited: a plaintiff may recover no more than $1,000, and the class may recover up to $500,000 or 1% of the debt collector's net worth, whichever it less.

12.     Plaintiffs seek, both individually and on behalf of all others similarly situated, such relief as is allowed under FDCPA including, without limitation, statutory damages, attorney fees and costs.

## II.    PARTIES

13.    VICTORIA L. BEYER is a natural person.

14.    At all times relevant to this lawsuit, VICTORIA L. BEYER was a citizen of, and resided in, the City of Neenah, Winnebago, County, Wisconsin.

15.    TERESA M. BISHOP is a natural person.

16.    At all times relevant to this lawsuit, TERESA M. BISHOP was a citizen of, and resided in, the City of Menasha, Winnebago, County, Wisconsin.

17.    MAGGIE J. BOHN is a natural person.

18.    At all times relevant to this lawsuit, MAGGIE J. BOHN was a citizen of, and resided in, the City of Menasha, Winnebago, County, Wisconsin.

19.    TOM E. BREMER is a natural person.

20.    At all times relevant to this lawsuit, TOM E. BREMER was a citizen of, and resided in, the City of Appleton, Outagamie County, Wisconsin.

21.    MICHELLE BREMER is a natural person.

22.    At all times relevant to this lawsuit, MICHELLE BREMER was a citizen of, and resided in, the City of Appleton, Outagamie County, Wisconsin.

23.    TOM E. BREMER and MICHELLE R. BREMER are collectively referred to hereinafter as the "Bremers."

24.    SCOTT M. BROEKMAN is a natural person.

25.    At all times relevant to this lawsuit, SCOTT M. BROEKMAN was a citizen of, and resided in, the Village of Suamico, Brown County, Wisconsin.

26.    JASON J. COGGON is a natural person.

27.    At all times relevant to this lawsuit, JASON J. COGGON was a citizen of, and resided in, the City of Oconto, Oconto County, Wisconsin.

28.     COLLEEN HIETPAS is a natural person.

29.     At all times relevant to this lawsuit, COLLEEN HIETPAS was a citizen of, and resided in, the City of Menasha, Winnebago, County, Wisconsin.

30.     TIMOTHY J. MOSSBERGER is a natural person.

31.     At all times relevant to this lawsuit, TIMOTHY J. MOSSBERGER was a citizen of, and resided in, the City of Kaukauna, Outagamie County, Wisconsin.

32.     EMILY J. SWITZ is a natural person

33.     At all times relevant to this lawsuit, EMILY J. SWITZ was a citizen of, and resided in, the City of Appleton, Outagamie County, Wisconsin.

34.     PAULA VERRETT is a natural person.

35.     At all times relevant to this lawsuit, PAULA VERRETT was a citizen of, and resided in, the City of Neenah, Winnebago, County, Wisconsin.

36.     AMERICOLLECT is a for-profit corporation formed under the laws of the State of Wisconsin.

37.     On information and belief, AMERICOLLECT  maintains its principal place of business at 1851 South Alverno Road, City of Manitowoc, Manitowoc County, Wisconsin.

38.     Defendants, JOHN DOES are sued using fictitious names as their true names and capacities are presently unknown to Plaintiffs. This Complaint will be amended by inserting the true names and capacities of these defendants once they are ascertained.

39.     On information and belief, JOHN DOES are natural persons or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw the unlawful policies and procedures that are the subject of this Complaint. In addition, those Defendants personally control, and are engaged in, the unlawful

acts, policies, and practices utilized by AMERICOLLECT and, therefore, are personally liable for all the wrongdoing alleged herein.

### III.    JURISDICTION & VENUE

40.    Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1337.

41.    Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to claims occurred within this federal judicial district, and because AMERICOLLECT is subject to personal jurisdiction in the State of Wisconsin at the time this action is commenced.

### IV.    FACTS APPLICABLE TO BEYER

42.    AMERICOLLECT sent BEYER a letter dated November 22, 2017 ("Beyer Letter").

43.    A true and correct copy of the Beyer Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted BEYER's financial account numbers and home address to protect her privacy.

44.    The Beyer Letter alleged that BEYER had incurred and defaulted on financial obligations to a third party for medical services ("Beyer Debt").

45.    The alleged Beyer Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

46.    On information and belief, sometime prior to November 22, 2017, the creditor(s) of the Beyer Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

47.    The Beyer Letter was AMERICOLLECT's first written communication to BEYER in connection with the Beyer Debt.

48.     The Beyer Letter listed the "Amount Due" as $101.69.

49.     The Beyer Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

50.     Towards the bottom of the Beyer Letter, two accounts are identified as comprising the Beyer Debt.

51.     The Beyer Letter identifies the last activity on the two accounts as April 27, 2017 and June 16, 2017 respectively.

52.     For each account, the amount of interest is listed as $0.00.

53.     For each account, the amount of interest did not increase.

## V.     FACTS APPLICABLE TO BISHOP

54.     AMERICOLLECT sent BISHOP a letter dated December 20, 2017 ("Bishop Letter").

55.     A true and correct copy of the Bishop Letter is attached hereto as ***Exhibit B***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted BISHOP's financial account numbers and home address to protect her privacy.

56.     The Bishop Letter alleged that BISHOP had incurred and defaulted on a financial obligation to a third party for medical services ("Bishop Debt").

57.     The alleged Bishop Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

58. On information and belief, sometime prior to December 20, 2017, the creditor of the Bishop Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

59. The Bishop Letter was AMERICOLLECT's first written communication to BISHOP in connection with the Bishop Debt.

60. The Bishop Letter listed the "Amount Due" as $69.00.

61. The Bishop Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

62. Towards the bottom of the Beyer Letter, one account is identified as comprising the Bishop Debt.

63. The Bishop Letter identifies the last activity on the account as August 7, 2017.

64. The amount of interest is listed as $0.00.

65. The amount of interest did not increase.

## VI. FACTS APPLICABLE TO BOHN

63. AMERICOLLECT sent BOHN a letter dated September 21, 2017 ("Bohn Letter").

64. A true and correct copy of the Bohn Letter is attached hereto as ***Exhibit C***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted BOHN's financial account numbers and home address to protect her privacy.

65. The Bohn Letter alleged that BOHN had incurred and defaulted on a financial obligation to a third party for medical services ("Bohn Debt").

66. The alleged Bohn Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

67. On information and belief, sometime prior to September 21, 2017, the creditor of the Bohn Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

68. The Bohn Letter was AMERICOLLECT's first written communication to BOHN in connection with the Bohn Debt.

69. The Bohn Letter listed the "Amount Due" as $179.20.

70. The Bohn Letter stated:

> **REQUEST FOR PAYMENT IN FULL**
>
> The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

71. Towards the bottom of the Bohn Letter, one account is identified as comprising the Bohn Debt.

72. The Bohn Letter identifies the last activity on the account as April 9, 2017.

73. The amount of interest is listed as $0.00.

74. The amount of interest did not increase.

## VII.    FACTS APPLICABLE TO THE BREMERS

75. AMERICOLLECT sent the BREMERS a letter dated September 1, 2017 ("Bremer Letter").

76. A true and correct copy of the Bremer Letter is attached hereto as ***Exhibit D***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially

redacted the BREMERS' financial account numbers and home address to protect their privacy.

77.     The Bremer Letter alleged that the BREMERS had incurred and defaulted on a financial obligation to a third party for medical services ("Bremer Debt").

78.     The alleged Bremer Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

79.     On information and belief, sometime prior to September 1, 2017, the creditor of the Bremer Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

80.     The Bremer Letter was AMERICOLLECT's first written communication to the BREMERS in connection with the Bremer Debt.

81.     The Bremer Letter listed the "Amount Due" as $277.38.

82.     The Bremer Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

83.     Towards the bottom of the Bremer Letter, one account is identified as comprising the Bremer Debt.

84.     The Bremer Letter identifies the last activity on the account as February 16, 2017.

85.     The amount of interest is listed as $0.00.

86.     The amount of interest did not increase.

## VIII.  FACTS APPLICABLE TO BROEKMAN

87.      AMERICOLLECT sent BROEKMAN a letter dated October 18, 2017 ("Broekman Letter").

88.      A true and correct copy of the Broekman Letter is attached hereto as ***Exhibit E***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted BROEKMAN's financial account numbers and home address to protect his privacy.

89.      The Broekman Letter alleged that BROEKMAN had incurred and defaulted on financial obligations to third parties for medical services ("Broekman Debt").

90.      The alleged Broekman Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

91.      On information and belief, sometime prior to October 18, 2017, the creditor of the Broekman Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

92.      The Broekman Letter was AMERICOLLECT's first written communication to BROEKMAN in connection with the Broekman Debt.

93.      The Broekman Letter listed the "Amount Due" as $663.13.

94.      The Broekman Letter stated:

> **REQUEST FOR PAYMENT IN FULL**
>
> The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

95.      Towards the bottom of the Broekman Letter, two accounts are identified as comprising the Broekman Debt.

96. The Broekman Letter identifies the last activity on the accounts as May 10, 2017 and May 13, 2017.

97. For each account, $0.00 is listed as the amount of interest.

98. For each account the amount of interest did not increase.

### IX. FACTS APPLICABLE TO COGGON

99. AMERICOLLECT sent COGGON a letter dated October 18, 2017 ("Coggon Letter").

100. A true and correct copy of the Coggon Letter is attached hereto as ***Exhibit F***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted COGGON'S financial account numbers and home address to protect his privacy.

101. The Coggon Letter alleged that COGGON Had incurred and defaulted on a financial obligation to a third party for medical services ("Coggon Debt").

102. The alleged Coggon Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

103. On information and belief, sometime prior to October 18, 2017, the creditor of the Coggon Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

104. The Coggan Letter was AMERICOLLECT's first written communication to COGGAN in connection with the Coggan Debt.

105. The Coggon Letter listed the "Amount Due" as $534.30.

106. The Coggon Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for

> collection. The amount due stated below, is the amount due
> as of the date of this letter. Future interest of 5% per year
> may be added to the account if the amount due is not paid.

107.    Towards the bottom of the Coggon Letter, one account is identified as comprising the Coggon Debt.

108.    The Coggon Letter identifies the last activity on the account as April 8, 2017.

109.    The amount of interest is listed as $0.00.

110.    The amount of interest did not increase.

## X.    FACTS APPLICABLE TO HIETPAS

111.    AMERICOLLECT sent HIETPAS a letter dated January 24, 2018 ("Hietpas Letter").

112.    A true and correct copy of the Hietpas Letter is attached hereto as ***Exhibit G***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted HIETPAS's financial account numbers and home address to protect her privacy.

113.    The Hietpas Letter alleged that HIETPAS had incurred and defaulted on a financial obligation to a third party for medical services ("Hietpas Debt").

114.    The alleged Hietpas Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

115.    On information and belief, sometime prior to January 24, 2018, the creditor of the Hietpas Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

116.    The Hietpas Letter was AMERICOLLECT's first written communication to HIETPAS in connection with the Hietpas Debt.

117.    The Hietpas Letter listed the "Amount Due" as $69.00.

118.   The Hietpas Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

119.   Towards the bottom of the Hietpas Letter, one account is identified as comprising the Hietpas Debt.

120.   The Hietpas Letter identifies the last activity on the account as July 26, 2017.

121.   The amount of interest is listed as $0.00.

122.   The amount of interest did not increase.

## XI.   FACTS APPLICABLE TO MOSSBERGER

123.   AMERICOLLECT sent MOSSBERGER a letter dated January 18, 2018 ("Mossberger Letter").

124.   A true and correct copy of the Mossberger Letter is attached hereto as ***Exhibit H***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted MOSSBERGER's financial account numbers and home address to protect his privacy.

125.   The Mossberger Letter alleged that MOSSBERGER had incurred and defaulted on a financial obligation to a third party for medical services ("Mossberger Debt").

126.   The alleged Mossberger Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

127.   On information and belief, sometime prior to January 18, 2018, the creditor of the Mossberger Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

128.    The Mossberger Letter was AMERICOLLECT's first written communication to MOSSBERGER in connection with the Mossberger Debt.

129.    The Mossberger Letter listed the "Amount Due" as $2,267.00

130.    The Mossberger Letter stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

131.    Towards the bottom of the Mossberger Letter, one account is identified as comprising the Mossberger Debt.

132.    The Mossberger Letter identifies the last activity on the account as August 27, 2017.

133.    The amount of interest is listed as $0.00.

134.    The amount of interest did not increase.

### XII.    FACTS APPLICABLE TO SWITZ

135.    AMERICOLLECT sent SWITZ letters dated September 20, 2017, December 20, 2017, February 12, 2018 ("Switz Letters").

136.    A true and correct copy of the Switz Letters are collectively attached hereto as ***Exhibit I***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted SWITZ's financial account numbers and home address to protect her privacy.

137.    The Switz Letters alleged that SWITZ had incurred and defaulted on financial obligations to a third party for medical services ("Switz Debts").

138.    The alleged Switz Debts arose out of one or more transactions in which the

money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

139.    On information and belief, sometime prior to September 20, 2017, December 20, 2017, February 12, 2018 the creditors of the Switz Debts either directly or through intermediate transactions assigned, placed, or transferred the debts to AMERICOLLECT for collection.

140.    The Switz Letters were AMERICOLLECT's first written communication to SWITZ in connection with the Switz Debts.

141.    The Switz Letter dated September 20, 2017 listed the "Amount Due" as $678.00.

142.    The Switz Letter dated December 20, 2017 listed the "Amount Due" as $122.40.

143.    The Switz Letter dated February 12, 2018 listed the "Amount Due" as $189.04.

144.    The Switz Letters each stated:

**REQUEST FOR PAYMENT IN FULL**

The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

145.    Towards the bottom of the Switz Letters, one account is identified as comprising the Switz Debts.

146.    The Switz Letter dated September 20, 2017 identifies the last activity on the account as February 27, 2017.

147.    The Switz Letter dated December 20, 2017 identifies the last activity on the account as May 19, 2017.

148.    The Switz Letter dated February 12, 2018 identifies the last activity on the account as August 7, 2017.

149.    The amount of interest for each account on the Switz Letters is listed as $0.00.

150.    The amount of interest for each account on the Switz Letters did not increase.

### XIII.   FACTS APPLICABLE TO VERRETT

151.    AMERICOLLECT sent VERRETT a letter dated November 22, 2017 ("Verrett Letter").

152.    A true and correct copy of the Verrett Letter is attached hereto as ***Exhibit J,*** except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted Verrett's financial account numbers and home address to protect her privacy.

153.    The Verrett Letter alleged that VERRETT had incurred and defaulted on a financial obligation to a third party for medical services ("Verrett Debt").

154.    The alleged Verrett Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

155.    On information and belief, sometime prior to November 22, 2017, the creditor of the Verrett Debt either directly or through intermediate transactions assigned, placed, or transferred the debt to AMERICOLLECT for collection.

156.    The Verrett Letter was AMERICOLLECT's first written communication to VERRETT in connection with the Verrett Debt.

157.    The Verrett Letter listed the "Amount Due" as $645.13.

158.    The Verrett Letter stated:

> **REQUEST FOR PAYMENT IN FULL**
>
> The below account(s) have been listed with our office for collection. The amount due stated below, is the amount due as of the date of this letter. Future interest of 5% per year may be added to the account if the amount due is not paid.

159.    Towards the bottom of the Verrett Letter, one account is identified as comprising the Verrett Debt.

160.    The Verrett Letter identifies the last activity on the account as March 17, 2016.

161.    The amount of interest is listed as $0.00.

162.    The amount of interest did not increase.

## XIV.   FACTS APPLICABLE TO ALL PLAINTIFFS

157.    AMERICOLLECT collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

158.    At all times relevant to this complaint, the amount of the debts AMERICOLLECT sought to collect from Plaintiffs in *Exhibits A-J* were static and did not increase.

159.    On information and belief, the creditors on whose behalf AMERICOLLECT sent *Exhibits A-J* do not charge interest on accounts referred to AMERICOLLECT for collection.

160.    The statement in *Exhibits A-J* that "Future interest of 5% per year may be added to the account if the amount due is not paid" is, therefore, false, deceptive, and misleading because at no time will interest be added to Plaintiffs' alleged debts.

161.    The statement in *Exhibits A-J* that "Future interest of 5% per year may be added to the account if the amount due is not paid" is materially false, deceptive, and misleading because it influences the unsophisticated consumer's decision to pay the debt.

162.    The statement in *Exhibits A-J* that "Future interest of 5% per year may be added to the account if the amount due is not paid" is materially false, deceptive, and misleading because it influences the unsophisticated consumer to pay the debt promptly, and before paying other debts, because a delayed payment would result in interest accruing.

162.    The statement in *Exhibits A-J* that "Future interest of 5% per year may be added to the account if the amount due is not paid" is also materially false, deceptive, and misleading because it fails to explain when interest will begin to be applied to each account and the manner in which interest will increase.

163.    *Exhibits A-J* deprived Plaintiffs of truthful, non-misleading, information in connection with AMERICOLLECT's attempt to collect a debt.

## XV.    CLASS ALLEGATIONS

164.    AMERICOLLECT'S conduct is consistent with the policies and practices used by AMERICOLLECT when attempting to collect debts from consumers throughout the State of Wisconsin. Consequently, this action is brought by Plaintiffs individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

165.    Plaintiffs seek to certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

166.    *Class Definition.* The Class consists of: All natural persons to whom AMERICOLLECT mailed a written communication in the form of *Exhibit A-J* to an address in the State of Wisconsin during the Class Period which begins one year prior to the date this Complaint was filed and ends 21 days after this Complaint was filed.

167.    The identities of the Class members are readily ascertainable from the business records of Defendant and those entities on whose behalf Defendant attempted to collect debts.

168.    *Class Claims.* The Class claims include all claims each Class member may have for a violation of the FDCPA arising from Defendant having mailed a written communication in the form of *Exhibits A-J* to such Class member.

169.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

170.     ***Numerosity.*** On information and belief, the Class is so numerous that joinder of all members would be impractical and includes at least 40 members.

171.     ***Common Questions Predominate.*** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members because such questions and issues concern the same conduct by Defendant with respect to each Class member.

172.     ***Typicality.*** The claims of the Plaintiffs are typical of Class because those claims arise from common course of conduct of the Defendant.

173.     ***Adequacy.*** Plaintiffs will fairly and adequately protect the interests of the Class members insofar as Plaintiffs have no interests that are averse to the Class members. Moreover, Plaintiffs are committed to vigorously litigating this matter and retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither Plaintiffs nor counsel for Plaintiffs have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

174.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to the Class members predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

175.     Based on discovery and further investigation (including, but not limited to, disclosure by Defendant of class size and net worth), Plaintiffs may, in addition to moving for class certification using modified definitions of the Class and/or Class claims, and the Class period, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## XVI. CAUSE OF ACTION AGAINST DEFENDANT FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

176.    The factual allegations in the preceding paragraphs are realleged and incorporated by reference.

177.    AMERICOLLECT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

178.    JOHN DOES are each a "debt collector" as defined by 15 U.S.C. § 1692a(6).

179.    The Beyer Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

180.    The Bishop Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

181.    The Bohn Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

182.    The Bremer Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

183.    The Broekman Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

184.    The Coggan Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

185.    The Hietmas Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

186.    The Mossberger Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

187.    The Switz Debts are each a "debt" as defined by 15 U.S.C. §1692a(5).

188.    The Verrett Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

189.    BEYER is a "consumer" as defined by 15 U.S.C. § 1692a(3).

190.    BISHOP is a "consumer" as defined by 15 U.S.C. § 1692a(3).

191.    BOHN is a "consumer" as defined by 15 U.S.C. § 1692a(3).

192.    TOM BREMER is a "consumer" as defined by 15 U.S.C. § 1692a(3).

193.    MICHELLE BREMER is a "consumer" as defined by 15 U.S.C. § 1692a(3).

194.    BROEKMAN is a "consumer" as defined by 15 U.S.C. § 1692a(3).

195.    COGGON is a "consumer" as defined by 15 U.S.C. § 1692a(3).

196.    HIETMAS is a "consumer" as defined by 15 U.S.C. § 1692a(3).

197.    MOSSBERGER is a "consumer" as defined by 15 U.S.C. § 1692a(3).

198.    SWITZ is a "consumer" as defined by 15 U.S.C. § 1692a(3).

199.    VERRETT is a "consumer" as defined by 15 U.S.C. § 1692a(3).

200.    ***Exhibit A*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

201.    ***Exhibit B*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

202.    ***Exhibit C*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

203.    ***Exhibit*** D is a "communication" as defined by 15 U.S.C. § 1692a(2).

204.    ***Exhibit E*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

205.    ***Exhibit F*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

206.    ***Exhibit G*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

207.    ***Exhibit H*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

208.    ***Exhibit I*** is a "communication" as defined by 15 U.S.C. § 1692a(2).

209.    The use and mailing of ***Exhibits A-J*** by Defendant in an attempt to collect Plaintiffs' Debts violated the FDCPA in one or more following ways:

   (a)    Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e including, but not limited to, violation of §§ 1692e(2), 1692e(5), 1692e(10);

   (b)    Using unfair or unconscionable means in violation of 15 U.S.C. § 1692f; and

   (c)    Failing to provide the amount of the debt in a manner required by 15 U.S.C. § 1692g(a)(1).

## XVII.  PRAYER FOR RELIEF

210.    WHEREFORE, Plaintiffs demand judgment against Defendant, as follows:

(a) An Order certifying this action as a class action pursuant to Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure including, but not limited to, defining the Class and the Class claims, issues, or defenses, and appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

(b) An award of statutory damages for the Plaintiffs and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

(c) An award to Plaintiffs for services on behalf of the Class as determined in the discretion of the Court;

(d) Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(e) For such other and firther relied as may be just and proper.

### XVIII. JURY DEMAND

211. Trial by jury is demanded on all issues so triable.

*s/Andrew T. Thomasson*
_____
*Andrew T. Thomasson*
Philip D. Stern (NJ Bar # 045921984)
Andrew T. Thomasson (NJ Bar # 048362011)
Francis R. Greene (IL Bar # 6272313)
*Attorneys for Plaintiff, Emily Switz, Tom E.*
*Bremer, Timothy J. Mossberger, Paula J.*
*Verrett, Heidi R. Cahak, Scott M.*
*Broekman, Elizabeth J. Erdmann, Teresa*
*Bishop, Paige Berndt, Colleen Hietpas,*
*Jason Coggon and Maggie Bohn*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone (973) 379-7500
E-mail: Philip@SternThomasson.com
E-mail: Andrew@SternThomasson.com
E-mail: Francis@SternThomasson.com

Dated: August 16, 2018